## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

MEADE GOODING,

        Plaintiff,

vs.                                                                CASE NO. _____

LIBERTY MUTUAL INSURANCE
COMPANY, a Foreign Profit
Corporation.

        Defendant.

_____/

## **DEFENDANT'S NOTICE OF REMOVAL**

Defendant Liberty Mutual Insurance Company, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby files this Notice of Removal ("Notice") removing the above-captioned matter to the United States District Court, Southern District of Florida, Miami Division, and expressly reserving all questions other than that of removal, states the following in support:

## **Background**

Plaintiff Meade Gooding filed a Complaint on April 14, 2025, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case Number 2025-006721-CA-01 (the "Circuit Court Action"). In his two-count Complaint, Plaintiff accuses Defendant of race discrimination and

retaliation in violation of the Florida Civil Rights Act ("FCRA"). Defendant received service of the Complaint and Summons on April 17, 2025. Defendant has not answered the Complaint.

True and correct copies of the Summons and Complaint, along with all process, pleadings, orders and other papers or exhibits on file with the state court, are being filed contemporaneously with this Notice and are attached as **Exhibit A**. The state court docket sheet is attached as **Exhibit B**.

<u>**Diversity Jurisdiction Exists**</u>

Diversity jurisdiction exists when (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). This case satisfies both elements.

**I.      The parties are completely diverse.**

Diversity jurisdiction requires complete diversity of citizenship. 28 U.S.C. § 1332. Citizenship turns on the domicile of the parties. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).

<u>Plaintiff is a citizen of Florida</u>. An individual's domicile is the state where he resides and intends to remain indefinitely. *Id.* To Defendant's knowledge, Plaintiff resides in Florida, where he has lived for over a decade, and does not intend to leave. Therefore, Plaintiff is a Florida citizen.

<u>Defendant is a citizen of Massachusetts</u>. Defendant—a corporation—is a citizen of the state (a) where it is incorporated and (b) where it maintains its

2

principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is determined by its "nerve center"—the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 130 (2010). Here, Defendant is incorporated in Massachusetts, and its principal place of business is in Massachusetts, which holds its Boston headquarters. *Carey v. S.J. Louis Const. Inc.*, No. 2:10-CV-2017GEBGGH, 2010 WL 3853348, at *3 (E.D. Cal. Sept. 30, 2010) (recognizing that Defendant is a Massuchesetts citizen). Because Defendant is not a citizen of Florida, complete diversity exists.[1]

## II.        The amount in controversy exceeds $75,000.

Diversity jurisdiction does not exist unless the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). When the plaintiff does not plead a specific damages amount, as here,[2] the defendant must prove the amount in controversy by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B). If it is not facially apparent from the complaint that the amount in controversy exceeds $75,000, the court looks to the notice of removal and other evidence at the time of removal. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th

---

[1] For that same reason, the forum-defendant rule does not bar removal. 28 U.S.C. § 1441(b)(2).

[2] Plaintiff alleges that his damages exceed $50,000, excluding attorneys' fees and costs. *See* Exhibit A at 4, ¶ 1.

Cir. 2010). Courts will make any reasonable deductions, inferences, and extrapolations to determine whether the defendant carried its burden. *Id.*

Here, Plaintiff seeks back pay, front pay, compensatory damages, attorneys' fees, and punitive damages. *See* Exhibit A at 12, ¶¶ 50–52; 13–14, ¶¶ 60–62. Plaintiff's potential back pay alone exceeds $75,000, and the remaining relief pushes the amount in controversy well above the statutory threshold. As a result, this Court has diversity jurisdiction.

### A.   Plaintiff's back pay alone exceeds $75,000.

Employees who prevail under the FCRA are entitled to back pay. Back pay is the compensation the employee would have earned but for the discrimination. *Monro v. Parsons*, 361 So. 3d 429, 432 (Fla. 1st DCA 2023). Generally, back pay runs from the date of the adverse employment action to the date of judgment. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1377 (S.D. Fla. 1998). However, for amount-in-controversy purposes, courts in this district are split on whether to calculate back pay through the date of judgment or the date of removal. *See Gower v. Reckitt Benckiser, LLC*, No. 19-60774, 2019 WL 13257944, at *3 (S.D. Fla. Apr. 30, 2019) (identifying the split).

The Court need not address this split. Plaintiff was terminated April 5, 2024—58 weeks before removal. *See* Exhibit A at 10, ¶ 37. Even assuming the back pay calculation only runs through removal, Plaintiff's potential back pay easily exceeds $75,000.

<u>Salary and Bonus</u>. Back pay includes an employee's lost salary and bonuses. *Sennello v. Reserve Life Ins. Co.*, 667 F. Supp. 1498, 1512 (S.D. Fla. 1987). The back pay calculation should also account for pay raises the employee would have received had the employment continued. *See Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1364 (11th Cir. 1994) (approving back pay calculation based on predicted pay raises). Here, Plaintiff's salary was $67,800 at termination, and it would have jumped to $69,700 three days post-termination. *See* Performance and Compensation Statements, attached as **Exhibit C**, at 6. During the 58 weeks between termination and removal, Plaintiff would have earned more than $77,000 in salary.

On top of that, Plaintiff received a bonus each year based on his performance and Defendant's earnings. *See* Offer Letter, attached as **Exhibit D**. Plaintiff would have received his 2024 bonus during the period between termination and removal, and based on his past bonuses, it is reasonable to believe that he would have earned at least $2,900.[3] Plaintiff also claims that Defendant cut his 2023 bonus by $2,600 in retaliation for his discrimination complaints. *See* Exhibit A at 16. Accordingly, Plaintiff's lost bonuses add $5,500 to the amount in controversy.

---

[3] In the three years preceding his termination, Plaintiff's average annual bonus was $2,960. *See* Exhibit C at 2, 4–5 (showing that Plaintiff earned $2,995.00 in 2021, $3,415.00 in 2022, and $2,472 in 2023)

Fringe Benefits. Back pay also includes fringe benefits like holiday pay, paid days off, annual retirement contributions, and profit-sharing plans. *Crabtree v. Baptist Hosp. of Gadsden, Inc.*, 749 F.2d 1501, 1502 (11th Cir. 1985); *Sennello*, 667 F. Supp. at 1512. Here, Plaintiff was entitled to eleven days of holiday pay ($2,948.77) and fifteen paid days off ($4,021.05). *See* Exhibit D, at 1–2. He also received a three-percent match on his 401k contributions (a $2,091 benefit), and he was entitled to participate in a pension plan that delivered more than $3,000 in annual cash balance benefits. *Id.* at 1.

Taken together, Plaintiff's salary ($77,000), bonuses ($5,500), holiday pay ($2,948.77), paid time off ($4,021.05), 401k benefits ($2,091), and pension-plan benefits ($3,000) exceed $94,000. Plaintiff's back pay alone satisfies the amount in controversy.

### B.    Front Pay

Plaintiff also seeks front pay—compensation lost between the time of judgment and reinstatement, or in lieu of reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). When a plaintiff sues for discrimination under the FCRA, courts in this district have added one year of front pay to the amount in controversy. *Taylor v. Wal-Mart Stores E., L.P.*, No. 09-21299-CIV, 2009 WL 10701010, at *4 (S.D. Fla. June 17, 2009) ("Here, one year of front pay, as the Court in *Brown* found, is reasonable, and thus the front pay amount of $6,500 is accepted for the purpose of determining the

amount in controversy."); *Penalver v. N. Elec., Inc.*, No. 12–80188–CIV, 2012 WL 1317621, at *2, *4 (S.D. Fla. Apr. 17, 2012).[4] This Court should do the same and add one year of front pay ($94,560.82) to the amount in controversy.

### C.   Compensatory Damages

The FCRA permits compensatory damages for mental anguish and emotional distress. Fla. Stat. § 760.11(5). Courts consider emotional distress damages when calculating the amount in controversy if the defendant presents evidence of damages from comparable cases. *Love v. N. Tool & Equip. Co.*, No. 08-20453-CIV, 2008 WL 2955124, at *5 (S.D. Fla. Aug. 1, 2008).

"Garden variety" emotional distress damages are available to plaintiffs suing for discrimination and retaliation under the FCRA. Garden variety emotional distress damages do not require medical treatment or proof of physical injury; instead, they typically stem from the plaintiff's testimony. *City of Hollywood v. Hogan*, 986 So. 2d 634, 649 (Fla. 4th DCA 2008). Jury awards for garden variety emotional distress based on discrimination and retaliation generally hover between $5,000 and $30,000. *Id.* Thus, when a plaintiff claims emotional distress from a discriminatory promotional decision—but presents

---

[4] Some courts in this district refuse to consider front pay when calculating the amount in controversy. *See Cole v. Gen. Parts Distribution, LLC*, No. 17-CV-14358, 2018 WL 3216118, at *3 (S.D. Fla. Feb. 9, 2018). Even if those decisions were correct, Plaintiff's back pay easily exceeds the amount in controversy.

no evidence of medical treatment or physical injury—an award of emotional distress damages should sit between $5,000 and $30,000. *Id.*

Here, Plaintiff claims emotional distress from a discriminatory promotional decision and retaliatory termination, among other acts. *See* Exhibit A at 12, ¶50; 13, ¶ 60. Even if Plaintiff sought no medical treatment and suffered no physical injury, it is reasonable to believe that a jury would award $5,000 to $30,000 for garden variety emotional distress. The Court should include the midpoint of that range, $17,500, in the amount in controversy.

### D.   Attorneys' Fees

Courts include attorneys' fees in the amount in controversy when the plaintiff sues under a statute that permits a fee award. *DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013). When a plaintiff sues for discrimination and retaliation under the FCRA, courts have added $15,000 to $20,000 in attorneys' fees to the amount in controversy. *Brown v. Cunningham Lindsey U.S., Inc.*, No. 3:05-cv-141, 2005 WL 1126670, at *4 (M.D. Fla. May 11, 2005) (accepting $15,000 as a reasonable estimate of fees more than twenty years ago); *see also Barnes v. JetBlue Airways Corp.*, No. 07-60441-CIV, 2007 WL 1362504, at *2 n.2 (S.D. Fla. May 7, 2007)

(accepting $20,000 as a reasonable estimate of fees).[5]  Here, Plaintiff sues for discrimination and retaliation under the FCRA; thus, the Court should add $17,500 in attorneys' fees to the amount in controversy.[6]

### E.  Punitive Damages.

The FCRA permits an award of punitive damages. Fla. Stat. § 760.11(5). Florida juries frequently award punitive damages on FCRA claims. *See Alvarez v. Royal Atl. Developers*, No. 1:07–cv–21333, 2011 WL 4914666 (S.D. Fla. June 8, 2011) (FCRA and Title VII case where jury awarded $19,519.23 in punitive damages); *Mumford v. Aziz & Cos., LLC*, No. 8:16–cv–352, (M.D. Fla. 2016) (Docs. 1, 29–30) (jury awarding $300,000 in punitive damages in Title VII and FCRA case).

Here, Plaintiff accuses Defendant of denying him a promotion, purposefully misreporting his sales numbers, refusing him time-off, giving him a poor performance review, cutting his bonus, and terminating his employment because of his race and in retaliation for his complaints of race discrimination. *See* Exhibit A at 6, ¶ 18 to 10, ¶39. On these facts, it is reasonable to infer that a Florida jury could award at least $20,000 in punitive damages.

---

[5] These cases—decided nearly two decades ago—drastically understate the cost of legal fees today.

[6] Some courts only calculate fees through the date of removal. *Castillo v. GeoVera Specialty Ins. Co.*, No. 21-CV-20059, 2021 WL 58116, at *2 (S.D. Fla. Jan. 7, 2021). Under that calculation, it is still reasonable to estimate that Plaintiff has incurred $5,000 in fees. *See Brown*, 2005 WL 1126670, at *4.

**F.      The Civil Cover Sheet confirms that the amount in controversy exceeds $75,000.**

Attorneys must complete a Civil Cover Sheet before suing in Florida state court. The Civil Cover Sheet requires the attorney to estimate the value of the claims and certify that the valuation is "accurate to the best of my knowledge and belief." *In re Amends. to Fla. Rules of Civ. Pro., Fla. Small Claims Rules, & Fla. Rules of App. Pro.—Jurisdiction*, 302 So. 3d 811, 812-13 (Fla. 2020). This valuation is probative of the amount in controversy. *Freeman v. Geovera Specialty Ins. Co.*, No. 20-61799-CIV, 2020 WL 9212052, at *2 (S.D. Fla. Oct. 29, 2020). Here, Plaintiff's counsel certified to the best of his knowledge and belief that these claims are worth more than $100,000. *See* Exhibit A at 1. This assertion—coupled with the evidence above—should satisfy the Court that the amount in controversy exceeds $75,000.

In sum, Plaintiff's back pay, front pay, compensatory damages, attorneys' fees, and punitive damages exceed $75,000. Diversity jurisdiction exists.

## **Venue is Proper**

Venue is proper in the United States District Court for the Southern District of Florida, Miami Division, because the Circuit Court Action is pending within the jurisdictional confines of this Court's District. *See* 28 U.S.C. § 1446(a).

## **Removal is Timely**

Removal is timely under 28 U.S.C. § 1446(b) because Defendant removed this case within thirty days of receiving service of process.

## **Notice is Proper**

In accordance with 28 U.S.C. § 1446(d), Defendant has given written notice of the filing of this Notice to Plaintiff. Defendant will also file a Notice of Filing Notice of Removal with the Clerk of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

By filing this Notice, Defendant does not waive and expressly reserves all rights, claims, and defenses, including, without limitation, all defenses relating to jurisdiction, venue, service of process, and personal jurisdiction.

**WHEREFORE**, Defendant respectfully requests that this action be removed from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida, Miami Division, and that this Court assume full jurisdiction over the action.

Dated:  May 16, 2025.                    Respectfully submitted,

*s/ William S. Weber*
James W. Seegers, Esq.
Florida Bar No.: 0122531
jseegers@bakerlaw.com
dmanser@bakerlaw.com
William S. Weber
Florida Bar No.: 1032238

11

Email: wsweber@bakerlaw.com
kaskinner@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, FL 32802-0112
Telephone:  407-649-4000
Facsimile:  407-841-0168

**ATTORNEYS FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 16, 2025, a true and correct of the foregoing was electronically filed using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ William S. Weber*
William S. Weber